United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALLY STEINHART,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JOSEPH BARKELA, et al.,<br><br>　　　　Defendants.<br>_____/ | No. C -11-03497 EDL<br><br>***AMENDED* ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT POLICE OFFICERS' MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART DEFENDANT MADRIGAL'S MOTION TO DISMISS** |

In this civil rights action, pro se Plaintiff Sally Steinhart[1] alleges claims for violation of the federal and state Fair Housing Acts, violation of various state laws, battery, slander, false imprisonment, and violation of 42 U.S.C. § 1983. Plaintiff's lawsuit arises out of a domestic dispute with Defendant Katherine Anna Gomez Madrigal that resulted in Plaintiff's arrest by Defendant City of Santa Rosa police officers. Plaintiff is also suing the property managers of the residential rental property where the domestic dispute occurred.

In January 2012, the Court heard motions to dismiss from the City Defendants and Ms. Madrigal. The Court granted the motions to dismiss largely with leave to amend, but without leave to amend as to Defendant City of Santa Rosa. Plaintiff timely filed an amended complaint. Before the Court are: (1) a Motion to Dismiss filed by Defendant City of Santa Rosa police officers Crespan and Pena; and (2) a Motion to Dismiss filed by Defendant Madrigal. The Court held a hearing on these motions on April 10, 2012. On April 11, 2012, Plaintiff filed an unsolicited letter in further support of her opposition to Ms. Madrigal's motion to dismiss. Because Plaintiff did not have leave

---

[1]　　Although Plaintiff is proceeding pro se in this matter, she is a California attorney.

to file the letter, the Court declines to consider it. For the reasons stated at the hearing and in this Order, the Court issued an Order on April 20, 2012 granting in part without leave to amend and denying in part Defendant police officers' motion and granting in part without leave to amend and denying in part Defendant Madrigal's motion. On May 25, 2012, Plaintiff filed a Motion for Leave to File a Motion for Reconsideration of the Court's April 20, 2012 Order. The Court denied Plaintiff's Motion for Leave, but issues this Order correcting two minor errors in the April 20, 2012 Order as noted by Plaintiff. First, the Court clarifies that Ms. Madrigal's motion to dismiss is denied as to Plaintiff's second claim to the extent it is based on California Civil Code section 1950.5(g)(1). Second, the Court corrects the statement in the April 20, 2012 Order that Plaintiff's complaint did not contain a claim for malicious prosecution.

**Background**

Plaintiff alleges that on or about November 30, 2009, she responded to an advertisement to rent a room in a residence located at 705 Brasher Court, Santa Rosa, California. Am. Compl. ¶ 9. Plaintiff alleges that she paid rent on a month to month basis for an exclusive bedroom and use of common areas in the residence such as the kitchen, laundry, bathroom and hallway, and also paid a $400.00 deposit to Defendant Madrigal. Am. Compl. ¶¶ 10, 12. Plaintiff alleges that there were no formal written home rules as part of the rental agreement. Am. Compl. ¶ 11. Plaintiff alleges that she resided at 705 Brasher Court until July 2010. Am. Compl. ¶ 13.

Plaintiff alleges that soon after she moved in, Ms. Madrigal began engaging in strange behaviors that limited Plaintiff's peaceful use of her unit and of the common areas, including limiting access to utilities and common areas. Am. Compl. ¶ 14. Plaintiff alleges that at times, Ms. Madrigal denied Plaintiff access to the wireless network at the home, even though wireless access was part of the verbal rental agreement. Am. Compl. ¶ 15. Plaintiff alleges that she contacted Comcast to establish internet access through cable wiring, but that Ms. Madrigal interfered with Plaintiff's attempt to gain internet access by sending the Comcast installer away and falsely telling him that Plaintiff was not home. Am. Compl. ¶ 16. Plaintiff alleges that she discovered what had happened, so she called Comcast again to set up another appointment, and she met the installer at the door. Am. Compl. ¶ 17. Plaintiff alleges that Ms. Madrigal accused the installer of trespassing and

called the police. Am. Compl. ¶ 17.  Plaintiff alleges that Defendant Officer Pena responded to the call, and confronted Plaintiff at the home. Am. Compl. ¶ 17.  Plaintiff alleges that Officer Pena stood in the doorway of the home, preventing Plaintiff from leaving and stating that if Plaintiff tried to leave and in the process touched him, he would arrest her. Am. Compl. ¶ 18.  Plaintiff alleges that she told Officer Pena that she would not touch him, but that she had an appointment and needed to leave, yet Officer Pena continued to block her exit. Am. Compl. ¶ 18.  Plaintiff alleges that she left the home by another exit and went to her car, and that Officer Pena went to her car and verbally harassed her for trying to leave. Am. Compl. ¶ 18.

Plaintiff alleges that thereafter, she discovered that several of her car tires had been shot through with nails while parked in front of the home. Am. Compl. ¶ 19.  She alleges that on another day, she discovered three of her four car tires were flat, due to additional screws that had been shot into the tires. Am. Compl. ¶ 19.  Plaintiff alleges that she reported these incidents to the police. Am. Compl. ¶ 19.  According to Plaintiff, Officer Pena responded to Plaintiff's call and refused to take a report, giving as a reason that Plaintiff had not witnessed the damage being done to her tires. Am. Compl. ¶ 20.

Plaintiff alleges that Officer Pena responded to Ms. Madrigal's call when she made an allegedly false report that Plaintiff had stolen tickets to the Sonoma County Peoples Symphony from Ms. Madrigal. Am. Compl. ¶ 21.   Plaintiff alleges that she did not have any interest in the tickets, and that instead, she wanted Ms. Madrigal to leave her alone. Am. Compl. ¶ 22.  Plaintiff alleges that Ms. Madrigal engaged in assaultive and harassing conduct toward Plaintiff, including verbal abuse, throwing newspapers at Plaintiff, physically assaulting Plaintiff for leaving something in the bathroom, making false statements to the police about Plaintiff, changing the locks on the door to the laundry facilities, removing the lock and handle from Plaintiff's bedroom door, and allowing her cats to use Plaintiff's bedroom as a litter box. Am. Compl. ¶ 22.  Plaintiff alleges that because of this abusive conduct, Plaintiff spent almost all of her time in her bedroom or away from the home. Am. Compl. ¶ 23.

During the spring of 2010, Plaintiff alleges that she wrote to Defendant Coralee Barkela, one of the property managers of the residence, and informed Barkela of the abuse and requested that she

3

take some action. Am. Compl. ¶ 40. Barkela's response, according to Plaintiff, was to issue Plaintiff a notice to vacate the residence. Am. Compl. ¶ 43. Plaintiff alleges that she challenged the eviction notice and a case was filed in state court in which Defendants Joseph and Coralee Barkela stated under penalty of perjury that Ms. Madrigal was acting as their agent as to the residence. Am. Compl. ¶ 44.

Plaintiff alleges that prior to July 2010, Ms. Madrigal befriended two women, who had used police officers to incarcerate Plaintiff in an effort to prevent Plaintiff from appearing to object to a petition for temporary guardianship of Plaintiff's son. Am. Compl. ¶ 45. Plaintiff alleges that one of these women won temporary guardianship of Plaintiff's son and still has custody. Am. Compl. ¶ 45. Plaintiff alleges that she has served a deposition notice on Ms. Madrigal, scheduling a deposition for July 9, 2010 in the case against the woman who has custody of Plaintiff's son. Am. Compl. ¶ 46.

Plaintiff alleges that on July 6, 2010, she discovered the women who have custody of her son sitting in their pickup truck in the driveway at 705 Brasher Court. Am. Compl. ¶ 47. Plaintiff alleges that she videotaped Ms. Madrigal and the two women while they were sitting in the truck. Am. Compl. ¶ 47. Plaintiff alleges that during the videotaping, Ms. Madrigal began verbally abusing Plaintiff, and when Ms. Madrigal stepped out of the truck, she fell on her hands, arms, back, side and buttocks. Am. Compl. ¶ 48. Plaintiff alleges that Ms. Madrigal got up, approached Plaintiff, grabbed for the camera and began physically attacking Plaintiff, including grabbing Plaintiff by the arms, grabbing and holding Plaintiff from behind, lacerating Plaintiff's arm and drawing blood, and grabbing and pulling Plaintiff's hair. AM. Compl. ¶ 48. Plaintiff alleges that during the struggle, Ms. Madrigal fell backwards, causing Plaintiff to fall on top of her as she was still holding on to Plaintiff and refusing to release her grip on Plaintiff. Am. Compl. ¶ 48. Plaintiff alleges that it was not until they both fell that Plaintiff was able to break free of Ms. Madrigal. Am. Compl. ¶ 48. Plaintiff alleges that she received a bleeding laceration on her upper arm. Am. Compl. ¶ 51.

Plaintiff left the area of the attack and returned to her car and began airing her tires so that she could use her car. Am. Compl. ¶ 49. Plaintiff was intending to leave to go to a class at Santa

4

Rosa Junior College. Am. Compl. ¶ 49.

Someone called 911. Am. Compl. ¶ 50. Plaintiff alleges that Ms. Madrigal falsely reported that Plaintiff attacked Ms. Madrigal. Am. Compl. ¶ 50. Plaintiff alleges that Ms. Madrigal was lying on the ground when the police arrived, and Ms. Madrigal was taken from the scene by ambulance. Am. Compl. ¶ 50. Plaintiff alleges that Ms. Madrigal admitted to the police that she had approached Plaintiff and grabbed for the camera. Am. Compl. ¶ 51.

Plaintiff alleges that she was arrested without a warrant and when she asked why she being handcuffed, she was told by Officer Pena that she would find out later. Am. Compl. ¶ 52. Plaintiff alleges that she was taken into custody, and only learned six hours later that she was charged with assault and battery with a dangerous weapon. Am. Compl. ¶ 52.

Plaintiff alleges that Officer Pena arrested Plaintiff on July 6, 2010 in retaliation and because he "held a grudge" against Plaintiff because she challenged him when he responded to Ms. Madrigal's call regarding the internet access and because he let her go on a previous occasion. Am. Compl. ¶ 24. Plaintiff alleges that on July 6, 2010, Officer Pena was the third officer to arrive on the scene, and that two other officers who arrived earlier were investigating the matter and Plaintiff was "peacefully airing her tires." Am. Compl. ¶ 25. Plaintiff alleges that Officer Pena "roared up in his police cruiser," saw Plaintiff airing her tires, "jammed on his brakes, coming to a screeching halt in the middle of the cul-de-sac, and, without speaking to Ms. Madrigal or the other two women involved, "ran screaming toward Plaintiff, who was still peacefully airing her tires." Am. Compl. ¶¶ 26, 31. Plaintiff alleges that Officer Pena "screamed and used profanity," ordered Plaintiff away from her car and began handcuffing her. Am. Compl. ¶ 27. Plaintiff alleges that she told Officer Pena that she was a victim of assault and had a videotape to prove it, yet Pena ignored Plaintiff and denied her request to be allowed to turn off the air compressor so her tire would not explode. Am. Compl. ¶ 28. Plaintiff alleges that Pena "roughly pushed her to the side of her car, handcuffed her hands tightly behind her back, and began running his hands over her body after she was handcuffed, touching her arms, her breasts, her stomach, her groin, her buttocks, outside of and between her legs, and into the pockets of her pants in a demonstration of his domination of Plaintiff and to humiliate her by his inappropriate touching of her body." Am. Compl. ¶ 29. Plaintiff alleges that Pena could

5

have had the female officer present pat her down "instead of taking the opportunity to grope Plaintiff." Am. Compl. ¶ 30. Plaintiff alleges that Pena cursed at her for bleeding on him from her arm wound. Am. Compl. ¶ 30. Plaintiff alleges that Pena performed no investigation, and did not question Ms. Madrigal or the other two women before arresting Plaintiff, and that is why Pena could not tell Plaintiff what she was being arrested for. Am. Compl. ¶ 32. Plaintiff alleges that Pena came to the scene with an intent already formed to arrest Plaintiff no matter what. Am. Compl. ¶ 33. Plaintiff alleges that Pena arrested Plaintiff on July 6, 2010 in retaliation for events that took place on other days. Am. Compl. ¶ 34. Plaintiff alleges that Pena lacked probable cause to arrest her because he had not talked to any witnesses, because Ms. Madrigal lacked credibility since she had made false police reports in the past, and because the other two women lacked credibility because they had no reason to be at the home that day. Am. Compl. ¶¶ 34-36.

Plaintiff alleges that she could not pay her bail and was incarcerated for ten days. Am. Compl. ¶ 53. Plaintiff alleges that at her preliminary hearing, Defendant Officer Crespan falsely testified that he had handcuffed and arrested Plaintiff, "apparently in furtherance of an agreement with Pena to conceal the fact that it was Pena who has handcuffed and arrested Plaintiff, suggestive of their mutual recognition that Pena lacked probable cause at the time of the arrest." Am. Compl. ¶ 37. Plaintiff alleges that after the preliminary hearing, the state court found that the arrest was improper and there was no evidence to hold Plaintiff on a felony charge. Am. Compl. ¶ 53. Plaintiff alleges that she was able to pay the reduced bail, and was released on the evening of July 16, 2010, but Ms. Madrigal had obtained a emergency protective order that prevented Plaintiff from going to her home or retrieving her property. Am. Compl. ¶ 26. Plaintiff alleges that the restraining order constructively evicted her. Am. Compl. ¶ 26. Plaintiff alleges that at one unlawful detainer hearing while Plaintiff was incarcerated, Plaintiff had to appear before the judge in the eviction matter in handcuffs, chains, shackles and jail clothes and without her glasses. Am. Compl. ¶ 56. Plaintiff alleges that when she asked for her glasses, she was punished and placed in solitary confinement. Am. Compl. ¶ 56.

Plaintiff alleges that she was unable to take Ms. Madrigal's deposition in her civil case "due to [Ms. Madrigal's] successful use of her police complaint to incarcerate plaintiff." Am. Compl. ¶

6

54. Due to the incarceration, Plaintiff also missed her final examinations and failed her courses at Santa Rosa Junior College. Am. Compl. ¶ 55.

Plaintiff alleges that the Barkela Defendants dismissed the civil eviction proceedings on or about July 20, 2010, but that the judge refused to set a date for Plaintiff to retrieve her belongings from 705 Brasher Court. Am. Compl. ¶ 57. Plaintiff alleges that some friends agreed to retrieve her belongings, and discovered that Plaintiff's room had been vandalized in bizarre ways that included excrement on her computer keyboard and clothes. Am. Compl. ¶ 58. Plaintiff alleges that she was never able to access all of her possessions. Am. Compl. ¶ 59. Thereafter, Plaintiff alleges that the district attorney dismissed all charges against her. Am. Compl. ¶ 60. Plaintiff alleges that the Sonoma County Superior Court found that Plaintiff was factually innocent of the charges based on the July 6, 2010 incident and entered an order to that effect. Am. Compl. ¶ 61.

Plaintiff alleges that her rental deposit was not returned even though Defendants had Plaintiff's mailing address. Am. Compl. ¶ 62.

Plaintiff filed this action on July 15, 2011, and filed an amended complaint on February 14, 2012, alleging claims for violation of the federal Fair Housing Act, violations of state laws regarding landlord duties, battery, slander, false imprisonment, and violation of 42 U.S.C. § 1983. Plaintiff seeks compensatory damages of $300,000 and punitive damages in the amount of $450,000.

**Legal Standard**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**Discussion**

**Defendant Police Officers' Motion to Dismiss**

Defendant Officers Crespan and Pena ("Defendants") move to dismiss Plaintiff's amended complaint on the grounds that the facts alleged in the amended complaint are inconsistent with the facts alleged in the original complaint, and that the amendments are not objectively reasonable. At the hearing, the Court granted the motion to dismiss as to Officer Crespan as unopposed. Also at the hearing, Defendants informed the Court that they intended to file an early motion for summary judgment on the issue of qualified immunity and sought a stay of discovery except as to qualified immunity. The Court declines to stay discovery at this time, but Defendant may file a motion seeking such a stay.

**1.  Defendant's motion to dismiss is denied to the extent it is based on the argument that Plaintiff has pleaded inconsistent facts**

Defendants argue that Plaintiff's complaint should be dismissed because the verified amended complaint contains facts inconsistent with the verified original complaint. Even if Plaintiff had alleged inconsistent facts in the two verified complaints, that would not be a basis for dismissal:

> The short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith-a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11-inconsistent allegations are simply not a basis for striking the pleading. The district court's order, which is based on the contrary conclusion, must be reversed.
> ***
> Rule 12 provides no authority to dismiss "sham" pleadings. If a party believes that its opponent pled in bad faith, it can seek other means of redress, such as sanctions under Rule 11, 28 U.S.C. § 1927 or the court's inherent authority. Chambers v. NASCO, Inc., 501 U.S. 32, 45-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

8

PAE Government Services, Inc. v. MPRI, Inc., 514 F.3d 856, 860 (9th Cir. 2007). Therefore, Defendant's motion to dismiss based on allegedly inconsistent allegations is denied.

### 2. Defendant's motion to dismiss is denied to the extent it relies on the "objectively unreasonable" standard from Rule 11

Defendants also argue that Plaintiff's amended complaint is objectively unreasonable and therefore should be dismissed. Defendants argue that it is not objectively reasonable that a sworn police officer dispatched to a call would not observe an injured person lying on the ground upon his arrival at the scene, and because it is not objectively reasonable that a sworn police officer would be dispatched to a call without information about the reporting party's report, identity of the victim, identity of the subject and location in question. See, e.g., Conn v. CSO Borjorquez, 967 F.2d 1418 (9th Cir. 1992) (stating that the standard for determining the propriety of Rule 11 sanctions is "one of objective reasonableness for determinations of frivolousness as well as of improper purpose.") see also, e.g., Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002); Holgate v. Baldwin, 425 F.3d 671, 676-77 (9th Cir. 2005). However, the "objectively reasonable" standard is used to determine the propriety of Rule 11 sanctions, not whether a complaint should be dismissed. Therefore, Defendant's motion to dismiss based on the argument that Plaintiff's amended complaint is objectively unreasonable is denied.

### 3. Plaintiff's objections to Defendant's evidence are sustained

In support of their motion to dismiss, Defendants submitted the declaration of Officer Pena that recounts his version of events that occurred with Plaintiff on and before July 6, 2010. Officer Pena attached several documents to the declaration: (1) an audio recording of his conversation on July 6, 2010 with Plaintiff; (2) a transcript of that audio recording; and (3) the police report of the incident on July 6, 2010.

Plaintiff objected to the Pena declaration and the exhibits, arguing that the documents are not referred to in the complaint and that the documents are not subject to judicial notice because the facts contained in them are disputed. Defendants have not provided any argument in support of the Court considering this evidence. Thus, because the documents are not referred to in the complaint, Plaintiff's objections are sustained.

**Defendant Madrigal's Motion to Dismiss**

9

Defendant Madrigal seeks to dismiss the first, second, third, fourth, and fifth claims against her. Previously, the Court granted in part and denied in part Ms. Madrigal's first motion to dismiss, denying the motion as to the first, third and fourth claims, and granting with leave to amend the motion as to the second and fifth claims.

### 1.     Ms. Madrigal's Motion to Dismiss Plaintiff's first claim is denied

The Court previously denied Ms. Madrigal's motion to dismiss this claim, finding that Plaintiff had stated a claim for violation of the fair housing acts. Ms. Madrigal provides no basis for revisiting that ruling. Accordingly, Ms. Madrigal's motion to dismiss the first claim is denied.

### 2.     Ms. Madrigal's Motion to Dismiss Plaintiff's second claim is granted in part and denied in part

Plaintiff alleges that in doing the acts alleged in the complaint, Ms. Madrigal violated statutory duties owed to residential tenants in California, specifically, California Civil Code sections 43 (". . . every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations."), 789.3 (landlord cannot cut off utilities for purposes of terminating a tenancy), 1927 (quiet enjoyment), 1940.2 (unlawful actions by landlord to terminate tenancy, e.g., theft, extortion), 1950.5(g)(1) (return of security deposit with itemized bill), 1954 (limits on entry of rental by landlord), 1965 (landlord cannot withhold tenant's personal property), and California Code of Civil Procedure section 1159 (forcible entry). Am. Compl. ¶¶ 71-72. Plaintiff alleges that together, these statutes "prohibit a landlord from cutting off utilities, locking out a tenant, violating quiet enjoyment, prohibit the refusal to return a tenant's property, refusal to return a deposit, entrance to a rented unit without notice or permission or a writ, or to remove a tenant's personal belongings from the home with the intention of terminating the tenancy, and generally, prohibit self help evictions, rendering defendants liable to plaintiff for statutory damages." Id.

Plaintiff has failed to state a claim for violation of California Civil Code sections 789.3, 1940.2, 1954, and California Code of Civil Procedure 1159. For example, there are no allegations about cutting off utilities for the purpose of terminating a tenancy in violation of Civil Code section 789.3, or about forcible entry in violation of California Code of Civil Procedure 1159. Further, there are no allegations against Ms. Madrigal of unlawful actions such as theft or extortion as a way to

terminate a tenancy in violation of California Civil Code section 1940.2 or of improper entry into the rental property in violation of California Civil Code section 1954. Thus, Ms. Madrigal's motion to dismiss the second claim is granted to the extent that the claim is based on violation of California Civil Code sections 789.3, 1940.2, 1954 and Code of Civil Procedure 1159. Because Plaintiff has already been given a chance to amend this claim, leave to amend is denied.

However, Plaintiff has stated a claim for violation of California Civil Code sections 43 and 1927. Plaintiff alleges that by Ms. Madrigal engaged in abusive verbal and physical conduct "for the purpose of terminating Plaintiff's tenancy," including changing the locks on the laundry facilities and removing the lock and door handle from Plaintiff's bedroom, throwing things at Plaintiff, physically assaulting Plaintiff, and denying Plaintiff use of common areas. Am. Compl. ¶ 22. In addition, Plaintiff has alleged a violation of California Civil Code section 1965 because she has alleged that she was never able to access all of her possessions at the residence. Am. Compl. ¶ 59. Plaintiff has also alleged that Ms. Madrigal withheld her rental deposit in violation of California Civil Code section 1950.5(g)(1). Am. Compl. ¶ 62. Thus, Ms. Madrigal's motion to dismiss this claim is denied as to the extent that the claim is based on California Civil Code sections 43, 1927, 1950.5(g)(1) and 1965.

### 3. Ms. Madrigal's Motion to Dismiss Plaintiff's third claim is denied

The Court previously denied Ms. Madrigal's motion to dismiss the third claim. In her third claim, Plaintiff alleges that on July 6, 2010, the date of the incident, "without provocation, Madrigal, after first verbally abusing Plaintiff, approached and offensively touched Plaintiff without her permission with unlawful intent to cause her harm, including by grabbing Plaintiff, holding her, pulling her hair, lacerating her arm, and other acts." Am. Compl. ¶ 76. Plaintiff alleges that she suffered harm as a result of these acts. Am. Compl. ¶ 77. Ms. Madrigal argues that Plaintiff has not pled any facts to support her allegation that Madrigal acted "without provocation." However, for purposes of a motion to dismiss, Plaintiff has stated a claim for battery. Accordingly, Ms. Madrigal's motion to dismiss the third claim is denied.

### 4. Ms. Madrigal's Motion to Dismiss Plaintiff's fourth claim is denied

The Court previously denied Ms. Madrigal's motion to dismiss the fourth claim. The

11

allegations supporting the slander claim were unchanged from the original complaint, and Ms. Madrigal has provided no reason for the Court to revisit its ruling.

Ms. Madrigal appears to argue that this claim should be dismissed because Plaintiff has unclean hands. The doctrine of unclean hands requires "that a plaintiff act fairly in the matter for which he seeks a remedy." Mendoza v. Ruesga, 169 Cal.App.4th 270, 279 (2008). "[I]t is an equitable rationale for refusing a plaintiff relief where principles of fairness dictate that the plaintiff should not recover, regardless of the merits of his claim." Id. The doctrine applies where a plaintiff acted unconscionably, or exhibited bad faith or inequitable conduct in connection with the matter in controversy. Id. "Unclean hands ... provides a complete defense to both legal and equitable causes of action." Id.; Adler v. Fed. Republic of Nigeria, 219 F.3d 869, 876-77 (9th Cir.2000) ("In California, the unclean hands doctrine applies not only to equitable claims, but also to legal ones."). However, a defense is not a consideration in ruling on a motion to dismiss, so Ms. Madrigal's motion to dismiss the fourth claim is denied.

**5. Ms. Madrigal's Motion to Dismiss Plaintiff's fifth claim is granted in part and denied in part**

The Court previously granted with leave to amend Ms. Madrigal's first motion to dismiss this claim, finding that Plaintiff had failed to allege any malicious conduct by Ms. Madrigal, and that Plaintiff had only alleged pure communication with the police that did not support a claim for false imprisonment against Ms. Madrigal because those pure communications with police are protected by statute. The tort of false imprisonment consists of the "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." Scofield v. Critical Air Medicine, Inc., 45 Cal.App.4th 990, 1001 (1996) (internal citations omitted) (minors confined on aircraft unauthorized by their father, through deceit, were falsely imprisoned). "That length of time can be as brief as 15 minutes." Id. (internal citations omitted). "Restraint may be effectuated by means of physical force, threat of force or of arrest, confinement by physical barriers, or by means of any other form of unreasonable duress." Id. (internal citations omitted).

However, an individual is not liable for false imprisonment unless he or she has "taken some active part in bringing about the unlawful arrest" by the police. Hagberg v. California Federal Bank FSB, 32 Cal.4th 350, 374 (2004) (internal citations omitted). There is no liability if, "acting in good

12

faith," he or she simply furnishes information leading to an arrest. Id.; see also Gorlack v. Ferrari, 184 Cal.App.2d 702, 709 (1960). Citizen reports of suspected criminal activity to law enforcement officers enjoy an absolute privilege of immunity from civil tort liability under section 47(b). Id. at 361 ("Rather, the privilege applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom [when] no function of the court or its officers is involved.") (internal citation omitted); Cal. Civil Code § 47 ("[a] privileged publication or broadcast is one made: [¶] ... [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, [and] (3) in any other official proceeding authorized by law, ..."). The only exception to application of section 47 to tort suits has been for malicious prosecution actions. See Hagberg, 32 Cal.4th at 375; Silberg v. Anderson, 50 Cal.3d 205, 216 (1990). The Hagberg court reiterated:

> [T]he absolute privilege established by section 47(b) serves the important public policy of assuring free access to the courts and other official proceedings. It is intended to "assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing." [The Supreme Court has] explained that both the effective administration of justice and the citizen's right of access to the government for redress of grievances would be threatened by permitting tort liability for communications connected with judicial or other official proceedings. Hence, without respect to the good faith or malice of the person who made the statement, or whether the statement ostensibly was made in the interest of justice, "courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceedings."

Hagberg, 32 Cal.4th at 360 (internal citations omitted). Although section 47 immunity protects pure communication by a citizen with a police officer, it does not extend to malicious conduct of a citizen that aids or promotes a peace officer's unlawful arrest. See Hagberg, 32 Cal.4th at 374; Kesmodel v. Rand, 119 Cal.App.4th 1128, 1136-37 (2004). The Kesmodel court explained:

> Had the Rands only informed the officers of Kesmodel's alleged criminal activity in order to prompt Kesmodel's arrest, and had the officers, after conducting an investigation based on the Rands' report, arrested Kesmodel, the Rands' activity would be protected from liability under section 47(b). However, the evidence in this case shows something far more than pure communication with the officers, i.e., conduct beyond just a report of the alleged crime to the police. . . . Because the Rands effected the citizen arrest the officers were obligated to accept custody of Kesmodel and to transport him to jail. In other words, Kesmodel was not arrested and taken into custody based on the officers' independent determination of the merits of the Rands' complaint. It was instead the Rands' act of effecting the citizen's arrest, rather than simply their communication, which caused Kesmodel's detention, imprisonment and thus harm. The Rands' noncommunicative act of arresting Kesmodel was

13

conduct, and thus not privileged under section 47(b), which protects only communications or broadcasts.

Kesmodel, 119 Cal.App.4th at 1136-37.

In her amended complaint, Plaintiff alleges that Ms. Madrigal made numerous false and groundless complaints against Plaintiff to the police over time, for the purpose of controlling Plaintiff and terminating her tenancy through self-help. Am. Compl. ¶¶ 22, 34, 39, 86. Plaintiff alleges that at the same time, Ms. Madrigal was verbally and physically abusing Plaintiff, using profane language, calling Plaintiff "unspeakable names" and accusing Plaintiff of having many different mental illnesses. Am. Compl. ¶ 86. Plaintiff alleges that Ms. Madrigal made slanderous statements to the police about Plaintiff, calling her a "5150" and stating that she suffered from mental illness. Am. Compl. ¶ 86. Plaintiff alleges that Ms. Madrigal portrayed herself as a gentle and peaceful person, but in truth, she was assaultive and abusive. Am. Compl. ¶ 86. Plaintiff alleges that through her conduct, Ms. Madrigal proximately caused Plaintiff to be taken into custody on July 6, 2010. Am. Compl. ¶ 87. Plaintiff alleges that the two women who had custody of Plaintiff's son acted in concert with Ms. Madrigal in planning the unprovoked attack on Plaintiff for the purpose of terminating her tenancy by means of false statements to the police. Am. Compl. ¶ 88.

The complaint still does not allege any malicious conduct by Ms. Madrigal that could be the basis for the false imprisonment claim relating to Plaintiff's arrest. Plaintiff alleges only pure communication by Ms. Madrigal with law enforcement officers, which is protected from tort liability by section 47. Therefore, Ms. Madrigal's motion to dismiss this claim is granted to the extent that Plaintiff alleges that Ms. Madrigal is liable for false imprisonment stemming from Plaintiff's arrest. Because Plaintiff has already been given a chance to amend this claim, leave to amend is denied.

It appears that Plaintiff also alleges that Ms. Madrigal herself falsely imprisoned Plaintiff before the arrest:

> During the video taping in the driveway, Madrigal began verbally abusing plaintiff, then went to get out of the truck and fell on her hands, arms, back, side, feet, legs, knees and buttocks. Madrigal got up, approached plaintiff, grabbed for plaintiff's video camera and commenced a physical attack on plaintiff, including grabbing plaintiff by the arms, grabbing and holding plaintiff from behind, lacerating plaintiff's arm and drawing blood, grabbing and pulling plaintiff's hair, and eventually falling

14

backward, causing plaintiff to fall on top of her as she was still holding onto plaintiff and refusing to release or let go of her grip on plaintiff.  Not until after they both fell was plaintiff able to break away from Madrigal.

Am. Compl. ¶ 48.  The tort of false imprisonment "consists of the '*nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short*.'  That length of time can be as brief as 15 minutes. *Restraint may be effectuated by means of physical force*, threat of force or of arrest, confinement by physical barriers, *or by means of any other form of unreasonable duress*. . . .  The only mental state required to be shown to prove false imprisonment is the intent to confine, or to create a similar intrusion." Fermino v. Fedco, Inc., 7 Cal.4th 701, 715 (1994) (internal citation omitted) (emphasis added).  Ms. Madrigal's motion to dismiss this claim is denied to the extent that Plaintiff alleges that Ms. Madrigal falsely imprisoned her during their physical altercation.

**Conclusion**

For the reasons stated above, the Court grants without leave to amend the motion to dismiss filed by Defendant Police Officers Crespan and Pena as to Officer Crespan, and denies the motion to dismiss as to Officer Pena.  The Court grants in part without leave to amend and denies in part Defendant Madrigal's motion to dismiss.

**IT IS SO ORDERED.**

Dated: June 5, 2012

ELIZABETH D. LAPORTE
United States Magistrate Judge

15