IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SALLY STEINHART,

    Plaintiff,

v.

JOSEPH BARKELA, et al.,

    Defendants.

No. C -11-03497 EDL

**ORDER GRANTING DEFENDANT OFFICER PENA'S MOTION FOR SUMMARY JUDGMENT**

In this civil rights action, pro se Plaintiff Sally Steinhart[1] alleges claims for violation of the federal and state Fair Housing Acts, violation of various state laws, battery, slander, false imprisonment, and violation of 42 U.S.C. § 1983. Plaintiff's lawsuit arises out of a domestic dispute with Defendant Katherine Anna Gomez Madrigal that resulted in Plaintiff's arrest by City of Santa Rosa police officers, including Defendant Officer Luis A. Pena.

Before the Court is Officer Pena's Motion for Summary Judgment. Because this motion is appropriate for decision without oral argument, the Court vacated the January 15, 2013 hearing date. For the reasons stated in this Order, Defendant's motion for summary judgment is granted.

**Background**

On July 6, 2010, at about noon, Plaintiff went outside the home at 705 Brasher Court that she shared with Defendant Madrigal. Steinhart Decl. ¶ 4. A Nissan pickup owned by witness Kathleen Curria was parked in the driveway. Steinhart Decl. ¶ 6. Curria was in the driver's seat, Jacqueline Cresswell was in the front passenger seat, and Defendant Madrigal was in the back passenger seat.

---

[1] Although Plaintiff is proceeding pro se in this matter, she is a California attorney.

Steinhart Decl. ¶¶ 6-7.

Plaintiff went back into the house after starting to put air in the tires of her car in order to get her video camera. Steinhart Decl. ¶ 7. After Plaintiff began videotaping, Madrigal opened the back passenger door and stood on the door frame. Steinhart Decl. ¶ 7. Madrigal began a tirade against Plaintiff, among other things, calling her names and accusing her of mental illness. Steinhart Decl. ¶ 7; Fritsch Decl. Ex. F (video).

Plaintiff states that Madrigal attempted to step down from the car, misjudged the distance and fell to the ground. Steinhart Decl. ¶ 8. Plaintiff states that Madrigal got up laughing. Steinhart Decl. ¶ 8. Then, according to Plaintiff, Madrigal advanced towards Plaintiff, grabbed her video camera, and grabbed Plaintiff's hair and left arm. Steinhart Decl. ¶ 9. Plaintiff states that Madrigal eventually got behind Plaintiff, grabbed her arms, pulled her hair and refused to let go. Steinhart Decl. ¶ 10. Plaintiff states that Madrigal lacerated Plaintiff's left arm. Steinhart Decl. ¶ 11. Plaintiff states that Madrigal was swinging Plaintiff around by the hair and arm, and Plaintiff was trying to get Madrigal to let go. Steinhart Decl. ¶ 12. Plaintiff states that she kept moving her feet to throw Madrigal off balance. Steinhart Decl. ¶ 14. Plaintiff states that after demanding several more times that Madrigal let Plaintiff go, Madrigal stumbled and fell backward while still holding on to Plaintiff, which caused Plaintiff to fall on top of Madrigal. Steinhart Decl. ¶ 15. Plaintiff states that she was able to get free, but that Madrigal grabbed Plaintiff's ankle, but after Plaintiff shook it a few times, Madrigal let go. Steinhart Decl. ¶ 17.

Plaintiff's video captures the altercation, on which witness Cresswell shouts "she's punching," and "she's kicking," apparently referring to Plaintiff. Fritsch Decl. Ex. I; Steinhart Decl. ¶ 16. Plaintiff denies punching or kicking. Steinhart Decl. ¶ 16. The video shows Plaintiff's lower legs and feet as she walks away. Fritsch Decl. Ex. I.

Plaintiff states that she walked back over to her car to continue putting air in the tires. Steinhart Decl. ¶ 19. From that location, Plaintiff could see Cresswell making a phone call. Steinhart Decl. ¶ 19. Plaintiff states that after a while, one police vehicle appeared at the house. Steinhart Decl. ¶ 19. Plaintiff states that if Madrigal was lying on the ground, she was hidden by a large green dumpster. Steinhart Decl. ¶ 20.

During this time, Cresswell called 911. Fritsch Decl. Ex. D (audio 911 call). Stephanie Burnett, a communication dispatcher with the City of Santa Rosa, received Cresswell's 911 call on July 6, 2010 in her capacity as a "911 call taker." Burnett Decl. ¶ 1, 3. Cresswell reported that Plaintiff had assaulted a 62-year-old female at 705 Brasher Court, that the victim had been punched in the head, arms, legs and stomach, and that the victim needed to be checked out because she was "pretty beat up." Burnett Decl. ¶ 3 (Cresswell identified Steinhart as well). Burnett created Event Number SR101870143 for this incident. Burnett Decl. ¶ 3. Burnett entered the information provided by Cresswell in the Event Chronology for ths incident. Burnett Decl. ¶¶ 7, 8. The Event Chronology shows that Crespan and Pena were dispatched to the address. Burnett Decl. ¶ 8. Both arrived on the scene after Cresswell called 911. Burnett Decl. ¶ 8.

Patricia Rodd, a communication dispatcher for the City of Santa Rosa, received information from Burnett about the incident in her capacity as a "dispatcher." Rodd Decl. ¶¶ 1, 3. Rodd dispatched Pena to the call for service as well as Crespan and Officer Caramella. Rodd Decl. ¶¶ 3, 4. Rodd provided a transcript of her dispatch, showing that the following information was provided to Pena and the officers by dispatch:

> 6 Robert 8 6 Lincoln 6, 242 just occurred.
> 6 Robert 8 Lincoln 6 at 705 Brasher Court, 705 Brasher Court across from Hoen Avenue. Report of a 62-year-old that was punched in the head and arms or actually all over the body, and has finger lacerations, medical is in route. Break.
> Six Robert 8 link 6, the suspect is reportedly still across the street in a silver Hyundai, 5 George King Henry 659, and the suspect is a Sally Steinhart, age 59, no weapons seen.

Rodd Decl. ¶ 4 ("6 Robert 8" is Pena).

Plaintiff states that Officer Crespan was the first officer to respond. Steinhart Decl. ¶ 22. Crespan did not handcuff Plaintiff or place her in a police car. Steinhart Decl. ¶ 23. Plaintiff states that some time after Crespan arrived, another police vehicle arrived at a high rate of speed and came to a sudden stop even with the rear of Plaintiff's car. Steinhart Decl. ¶ 24. Plaintiff states that this was Officer Pena, and that he got out of his car and started screaming at Plaintiff and running towards her. Steinhart Decl. ¶ 25. Plaintiff states that Pena continued to scream while approaching Plaintiff, directing her to stop what she was doing and to put her hands behind her back. Steinhart Decl. ¶ 26. Plaintiff states that Pena arrested her. Steinhart Decl. ¶ 26. Plaintiff states that Pena

3

1 handcuffed her, patted her down, and put her in the back of his police car. Steinhart Decl. ¶ 29.
2 Plaintiff was eventually transferred to Crespan's police car and taken to jail. Steinhart Decl. ¶ 37.

Pena states in his declaration that he arrived on the scene at 705 Brasher and contacted a female lying in the driveway in front of a Nissan truck who identified herself as Madrigal. Request for Judicial Notice Ex. 3 (Pena Declaration) at ¶ 4. Madrigal told Pena that after Madrigal contacted Plaintiff who was videotaping Madrigal, Plaintiff pushed Madrigal to the ground and kicked her several times in the stomach. RJN Ex. 3 at ¶ 4.

Pena contacted Cresswell who told him that she was in the truck with Madrigal and Curria, and that Plaintiff began to grab Madrigal violently by the arms, then threw her against the truck and then threw her to the ground. RJN Ex. 3 at ¶ 4. Cresswell told Pena that Plaintiff kicked Madrigal several times in ths stomach. RJN Ex. 3 at ¶ 4.

Pena contacted Curria, who told Pena that she was in the truck with Madrigal and Cresswell. RJN Ex. 3 at ¶ 4. Curria saw Madrigal contact Plaintiff who was videotaping, and then saw Plaintiff grab Madrigal by the arms, shove her against the truck, push her to the ground and kick in the stomach several times. RJN Ex. 3 at ¶ 4.

Pena then contacted Plaintiff, and recorded his conversation. RJN Ex. 3 at ¶ 5. Pena determined that after Madrigal was on the ground, Plaintiff had the opportunity to get away from Madrigal and was safe from Madrigal. RJN Ex. 3 at ¶ 6. Based on the witness statements known to Pena, Plaintiff had kicked Madrigal several times in the stomach after Madrigal was on the ground. RJN Ex. 3 at ¶ 6. Pena felt that Plaintiff knew that she could have caused great bodily harm to Madrigal by kicking her several times. RJN Ex. 3 at ¶ 6. Pena was told by medical staff who transported Madrigal to the hospital that she may have suffered internal injuries. RJN Ex. 3 at ¶ 6. Based on all of this evidence, Pena determined that there was probable cause to arrest Plaintiff. RJN Ex. 3 at ¶ 6.

**Objections**

Plaintiff objects to the Court taking judicial notice of Pena's declaration and the attachments thereto, arguing that the declaration is "a self-serving repetition of hearsay," and that the transcript attached to the declaration does not reflect the entire conversation between Plaintiff and Pena at the

4

1  scene. Plaintiff's objection that the declaration is self-serving is not well-taken. Further, there is no
2  showing that the transcript itself is incomplete and therefore, Plaintiff's objection is overruled.

3 Further, Pena's declaration is judicially noticable. Fed. R. Evid. 201 ("The court may
4  judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known
5  within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from
6  sources whose accuracy cannot reasonably be questioned."). The Pena declaration was filed in this
7  action and was not stricken from the record on the motion to dismiss, although the Court declined to
8  consider it at that time. Moreover, even if the Pena declaration was not subject to judicial notice,
9  because it is part of the file in this case, the Court deems it filed in connection with this motion.

10 Defendant's objection to paragraph 2 of Plaintiff's declaration is overruled as moot because
11 there are no assertions in Plaintiff's declaration that are based on her information and belief.
12 Defendant's objection to paragraphs 4 through 17 of Plaintiff's declaration is overruled because
13 even though the evidence is not directly relevant to the summary judgment motion, it is admissible
14 as background information. Defendant's objection to paragraph 20 of Plaintiff's declaration is
15 overruled; Plaintiff was at the scene so she has a foundation for her statement.

**Legal Standard**

17 Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on
18 file, and any affidavits show that there is no genuine issue as to any material fact and that the
19 movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Material facts are those
20 which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
21 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury
22 to return a verdict for the nonmoving party. Id. The court must view the facts in the light most
23 favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn
24 from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The
25 court must not weigh the evidence or determine the truth of the matter, but only determine whether
26 there is a genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

27 A party seeking summary judgment bears the initial burden of informing the court of the
28 basis for its motion, and of identifying those portions of the pleadings and discovery responses that

5

demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party "may not rely merely on allegations or denials in its own pleading;" rather, it must set forth "specific facts showing a genuine issue for trial." See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250. If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

**Discussion**

Defendant argues that Pena is entitled to summary judgment because he had probable cause to arrest Plaintiff for violation of California Penal Code section 245(a)(1), and even if there was no probable cause, he argues that he is entitled to summary judgment because he made a reasonable mistake for which he is entitled to qualified immunity.

**1.      There is no triable issue of fact that Pena had probable cause to arrest Plaintiff**

Under California law, "an officer has probable cause for a warrantless arrest 'if the facts known to him would lead a [person] of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.'" Peng v. Hu, 335 F.3d 970, 976 (9th Cir. 2003) (quoting People v. Adams, 175 Cal.App.3d 855 (1985)). "This is very similar to the Fourth Amendment test applied by this court, which provides that '[p]robable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime.'" Peng, 335 F.3d at 970 (quoting United States v. Buckner, 179 F.3d 834, 837 (9th Cir.1999) (citations and quotations omitted)). "Fourth Amendment issues [ ] are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." Saucier v. Katz, 533 U.S. 194, 207 (2001).

The relevant question for probable cause is whether "at the moment the arrest was made," the

6

facts and circumstances within the officers' knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing the suspect had violated the law." Grant v. City of Long Beach, 315 F.3d 1081, 1089 (9th Cir. 2002); see also Beier v. City of Lewison, 354 F.2d 1058, 1065 (9th Cir. 2004) (probable cause exists if, "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability the [the plaintiff] had committed a crime."). Further, "[i]t may therefore be stated as a general proposition that private citizens who are witnesses to or victims of a criminal act, absent some circumstance that would cast doubt upon their information, should be considered reliable. In short, probable cause will not be provided by conclusionary information or anonymous informants, but neither a previous demonstration of reliability nor subsequent corroboration is ordinarily necessary when witnesses to or victims of criminal activities report their observations in detail to the authorities." People v. Ramey, 16 Cal.3d 263, 369 (1976) (internal citation omitted).

"Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. . . . Rather, the court will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action: 'In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Adams v. Williams, 407 U.S.143, 148 (1972). If a defendant had probable cause to make an arrest, then the plaintiff's arrest is lawful regardless of the officer's subjective motivation. Tatum v. City & County of S.F., 441 F.3d 1090,1094 (9th Cir.2006). Additionally, once probable cause is established, an officer is under no duty to further investigate or look for additional evidence which may exculpate the accused. See Broam v. Bogan, 320 F.3d 1023, 1032 (9th Cir. 2003). "The Constitution does not guarantee that only the guilty will be arrested. If it did, section 1983 would provide a cause of action for every defendant acquitted- indeed for every suspect released." Baker, 443 U.S. at 145.

Pena arrested Plaintiff under California Penal Code section 245(a)(1), which, at the time of Plaintiff's arrest, stated:

> (a)(1) Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce

7

> great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment.

United States v. Grajeda, 581 F.3d 1186, 1191 & n.5 (9th Cir. 2009) ("The statute thus requires two basic elements, the second defined in the disjunctive: the defendant must have (1) committed an assault (2) using a deadly weapon or instrument or any other 'means of force likely to produce great bodily injury.') (internal citation omitted). "The element of 'assault' is defined in California Penal Code section 240 as 'an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.'" Id. (quoting Cal. Penal Code § 240 (West 1995)).

"One may commit an assault without making actual physical contact with the person of the victim; because the statute focuses on use of a deadly weapon or instrument or, alternatively, on force likely to produce great bodily injury, whether the victim in fact suffers any harm is immaterial." People v. Aguilar, 16 Cal.4th 1023, 1028 (1997) (citing People v. Wingo, 14 Cal.3d 169, 176 (1975)). "That the use of hands or fists alone may support a conviction of assault 'by means of force likely to produce great bodily injury' is well established. . . ." Id. (internal citations omitted). Further, "'[t]he gravamen [of assault] ... is the likelihood that the force applied or attempted to be applied will result in great bodily injury.'" People v. Williams, 26 Cal.4th 779, 787 (2001) (quoting People v. McCaffrey, 118 Cal.App.2d 611, 618-19 (1953)); Grajeda, 581 F.3d at 1193 ("'The intent to cause any particular injury, to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary. The pivotal question is whether the defendant intended to commit an act likely to result in such physical force, not whether he or she intended a specific harm. Because the nature of the assaultive conduct itself contemplates physical force or "injury," a general intent to attempt to commit the violence is sufficient to establish the crime.'") (quoting People v. Colantuono, 7 Cal.4th 206, 218 (1994)).

Here, the evidence of what Pena knew before he arrived on the scene on July 6, 2010 demonstrates that he had probable cause to believe that Plaintiff violated Penal Code section 245(a)(1). It is undisputed that Cresswell reported certain facts to the 911 operator, who in turn conveyed that information to Pena and other officers. Plaintiff has provided no evidence to show that Pena knew anything other than what the dispatcher told him before arriving on the scene. There

8

is no triable issue of fact that there was a 911 phone call that reported that Plaintiff was the aggressor and had punched and kicked Madrigal several times, and that Madrigal was on the ground. Although Plaintiff argues that Cresswell and Curria were not disinterested citizen witnesses, Pena was entitled to rely on the report of the witnesses in the absence of any reason to believe that they were not reliable. See Ramey, 16 Cal.3d at 269. Further, there is no triable issue of fact that medical assistance had been called to the scene, which had been relayed to Pena by the dispatcher, so Pena also knew before arriving that the force used in the incident was substantial. Thus, prior to his arrival on the scene, Pena could reasonably conclude that substantial force had been used by Plaintiff against Madrigal that resulted in Madrigal being taken to the hospital. Therefore, the facts and circumstances within Pena's knowledge were sufficient to warrant a reasonable person to believe that Plaintiff had violated the law, so he had probable cause to arrest Plaintiff. Further, even though Plaintiff argues that Pena had a duty to investigate further, "once probable cause to arrest someone is established, however, a law enforcement officer is not 'required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.'" Broam v. Bogan, 320 F.3d 1023, 1032 (9th Cir. 2003) (quoting Baker v. McCollan, 443 U.S. 137, 145-46 (1979)).

Even assuming that Plaintiff is right that Madrigal was the aggressor, that Madrigal assaulted Plaintiff rather than vice versa, and that Pena did not speak to any witnesses before running up to Plaintiff and arresting her, Pena had probable cause to arrest her even before he arrived on the scene based on the dispatcher's report of the events at the scene and the fact that emergency medical services had been called. Plaintiff has provided no evidence to call into question the dispatcher's statements to the officers. Under Plaintiff's version of the facts, that Pena came up to her first and arrested her before speaking with witnesses, Pena acted with probable cause because he reasonably had in his mind what the dispatcher said about the incident.

Plaintiff also argues that absent physical injury to Madrigal, she could not have been arrested for violation of section 245(a)(1) and that, therefore, Pena lacked probable cause. See Opp. at 4 (". . . the lack of physical evidence of great bodily injury or serious bodily injury, precludes probable cause."). In particular, Plaintiff argues that Cresswell's version of events that she related to the 911

9

calltaker was contradicted by the lack of physical injury as revealed at the later preliminary hearing, and that because there was no actual serious bodily injury, there was no basis to arrest Plaintiff for violation of Penal Code section 245(a)(1). However, there can be an assault even without any physical touching. See Aguilar, 16 Cal.4th at 1028; People v. Wingo, 14 Cal.3d 169, 177 (1975) ("But the breadth of the challenged statute encompasses considerably more than this narrow range of offenses. At one end of the spectrum there is conduct virtually indistinguishable from premeditated murder, while at the other there is a mere attempt to seriously injure which lacks any specific intent and is completely futile. . . . Moreover, since the statute focuses on force likely to produce harm, it is immaterial that the force actually resulted in no harm whatever.") (internal citations omitted). Moreover, Pena could have reasonably concluded based on the information from the dispatcher and the medical team on the scene that Madrigal had suffered physical injury, and the fact that later, at a preliminary hearing, it was revealed that there was no physical injury does not shed any light on the probable cause argument.

Viewing the evidence in the light most favorable to Plaintiff, there is no triable issue of fact that before Pena arrived on the scene, he had probable cause to arrest Plaintiff for violation of Penal Code section 245(a)(1).

**2.     Alternatively, Pena is entitled to qualified immunity**

"A qualified immunity analysis must begin with this threshold question: based upon the facts taken in the light most favorable to the party asserting the injury, did the officer's conduct violate a constitutional right? If no constitutional right was violated, the court need not inquire further. If, however, a constitutional violation occurred, the second inquiry is whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." Jackson v. Bremerton, 268 F.3d 646, 651 (9th Cir. 2001) (citing Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001)). The standard for qualified immunity is the "'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly

10

1 established' or the [official] could have reasonably believed that his particular conduct was lawful."
2 Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991). If Defendants had a reasonable but
3 mistaken belief that their conduct was lawful, qualified immunity applies. Saucier, 533 U.S. at
4 205-6.

  Because the law is clearly established that officers required probable cause before arresting Plaintiff, the question is whether a reasonable officer could have believed that probable cause existed to arrest Plaintiff. See Franklin v. Fox, 312 F.3d 423, 437 (9th Cir. 2002) ("Our inquiry is an objective one, based on what a reasonable officer would believe if faced with the 'facts and circumstances' actually known to the officer in question. [citation omitted]. The parties do not dispute that existing law at the time of [plaintiff's] arrest clearly established that he could not be arrested in the absence of probable cause. He must therefore only determine whether, viewing all evidence in the light most favorable to [plaintiff], [the officers] reasonably could have believed they had probable cause for an arrest."). Here, a reasonable officer could have reasonably believed that he had probable cause to arrest Plaintiff based on what he knew from the dispatcher when he arrived at the scene, and there is no evidence that Pena knew or should have known that the statements by Cresswell to the 911 dispatcher were false. See Pearson v. Callanan, 555 U.S. 223, 231 (2009) ("The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'") (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)). Therefore, Pena is entitled to qualified immunity.

**Conclusion**

  Accordingly, Defendant Officer Pena's Motion for Summary Judgment is granted.

  **IT IS SO ORDERED.**

Dated: January 11, 2013

ELIZABETH D. LAPORTE
United States Magistrate Judge

11